IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL MATTHEW PARISI,<br><br>    Plaintiff,<br><br>    vs.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>DR. ALMA MARTIJA, DR. ANN HUNDLEY-<br>DAVIS, CLAUDE OWIKOTI, TARRY<br>WILLIAMS, MICHAEL LEMKE, GHALIAH<br>OBAISI, independent executor of the estate<br>of DR. SALEH OBAISI, ANNA MCBEE,<br>SALVADOR GODINEZ, DONALD<br>STOLWORTHY, and JOHN BALDWIN,<br><br>    Defendants. | Case No. 17 C 444 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Paul Matthew Parisi, a former inmate at Stateville Correctional Center, has sued members of the prison's medical staff, employees of the Illinois Department of Corrections (IDOC), and the corporation providing healthcare services to the prison under 42 U.S.C. § 1983, alleging they violated his Eighth Amendment rights. The defendants have moved for summary judgment. For the reasons stated below, the Court grants the defendants' motions.[1]

### Background

The following facts are undisputed except where otherwise noted. Parisi was an

---

[1] The Court thanks Stanley A. Kitzinger, Nathan Pear Karlsgodt, and Joanne M. Krol of McKnight & Kitzinger, LLC for their service as appointed counsel for Mr. Parisi.

inmate at Stateville between August 2012 and June 2015. During that time, he experienced health issues relating to hypertension, or high blood pressure; hyperlipidemia, or high cholesterol; and diabetes. It is undisputed that Parisi did not receive two prescribed medications between mid-February through April 18, 2013. He also contends that he did not receive medications between around April 22, 2013 and March 10, 2014 and from around December 2014 through at least February 3, 2015.

Wexford Health Sources Inc. is a private corporation that provides healthcare services to inmates at IDOC prisons pursuant to a contract with the State of Illinois. Wexford employs the doctors, nurses, and physician's assistants who work in the healthcare unit at Stateville. A vendor, Boswell Pharmacy, provides pharmacy services to inmates at Stateville. The IDOC employs the prison's wardens, correctional counselors, and grievance officers.

Starting as early as August 21, 2012, Parisi saw medical clinicians at Stateville's health center to discuss and monitor his high blood pressure and cholesterol. On that date, a clinician prescribed Parisi with a six-month supply of a prescription medication, Lopid, and a vitamin supplement, niacin, to treat his cholesterol.

On November 29, 2012, Parisi had an appointment with Dr. Aguinaldo, an employee of Wexford who is not an individual defendant in this case.[2] Dr. Aguinaldo ordered Lopid and niacin for Parisi, but, on the order form, he did not indicate the duration for which he was prescribing the medications. Without the duration, the prescription order was invalid, and Boswell Pharmacy did not fill it. It is unclear whether any employees of Wexford or the IDOC knew the order was invalid; there is no

---

[2] The record does not appear to indicate Dr. Aguinaldo's first name.

evidence showing that any of the individual defendants did.

In February 2013, Parisi stopped receiving his Lopid medications and niacin supplements because the initial prescription from August 2012 had expired. Although the November 2012 prescription from Dr. Aguinaldo should have been in effect, Parisi never got medications from that prescription order because of its invalidity. On April 9, 2013, Parisi filed an emergency grievance stating that he had not received his medications since February.

While the grievance was pending, on April 18, 2013, Parisi had an appointment with Dr. Ann Davis, a defendant in this case and an employee of Wexford.[3] It is undisputed that Parisi had not been receiving his medications since mid-February. Dr. Davis did not know why Parisi had stopped receiving his medications, but she restarted his orders for Lopid and niacin and issued additional orders for baby aspirin and fish oil. She found that Parisi's blood pressure was mildly elevated and that his triglyceride level was 448. Triglycerides and cholesterol are lipids, or fatty substances, found in a person's blood. High triglyceride and high cholesterol levels may increase a person's risk of a heart attack, stroke, or other serious medical conditions. The parties dispute whether a triglyceride level of 448 is so high as to require treatment.

That day, Parisi filed another emergency grievance asking to receive his medication as prescribed. The prison's then-warden, Michael Lemke, did not personally review Parisi's April 9, 2013 or April 18, 2013 grievances. Parisi resubmitted the grievances to Anna McBee, a correctional counselor and grievance officer at Stateville,

---

[3] The parties are inconsistent in whether they refer to this defendant as Dr. Davis or Dr. Hundley-Davis. The Court adopts Dr. Davis's lawyers' approach.

who forwarded them to the health care unit for review. McBee issued reports recommending that the IDOC take no action on the grievances because Parisi appeared to be receiving appropriate medical care, and she included responses from a health care unit administrator in one report and from a nurse in the other. Parisi appealed the denials, and the IDOC's Administrative Review Board denied the appeals. It is undisputed that the IDOC's then-Director Salvador Godinez did not review the grievances and had no personal knowledge of them.

On July 23, 2013, Parisi had another appointment with Dr. Davis. She noted that his blood pressure and cholesterol levels were lower, and his triglyceride level had fallen to 171. She increased the amount of Lopid prescribed to Parisi. The parties dispute whether Dr. Davis issued an order for Parisi to undergo a A1C test, used to measure blood glucose levels in order to diagnose and monitor diabetes, and whether he underwent that test. Parisi had another appointment with Dr. Davis on December 20, 2013, at which she increased the dosages for his niacin supplement and his prescription for fiber lax, a laxative.

On March 28, 2014, Parisi filed a grievance stating that he had not received his medications between March 10 and March 19, 2014 and that he was still not receiving his prescribed fish oil. Wexford asserts that, according to the medical records, Parisi received his medications during this timeframe. Unlike the two previous grievances, Parisi did not file this one as an emergency. The warden at the time, Tarry Williams, did not personally review the grievance. McBee again forwarded the grievance to the health care unit, issued a report recommending that the IDOC take no action because Parisi appeared to be receiving appropriate medical care, and included the health care

unit's response in her report. Parisi appealed the grievance denial, and the IDOC's Administrative Review Board denied the appeal. It is undisputed that the IDOC's then-acting Director Donald Stolworthy did not personally review the grievance and had no personal knowledge of it.

On April 8, 2014, Parisi had an appointment with Claude Owikoti, who is a physician's assistant, a defendant in this case, and an employee of Wexford. Owikoti found that Parisi's blood pressure was in a normal range and his triglyceride level was 181. The parties agree that Parisi told Owikoti that he was not receiving his fish oil, although they dispute whether Parisi was, in fact, receiving it. Owikoti prescribed aspirin, niacin, lopid, fiber lax, and fish oil for Parisi's hyperlipidemia. On July 23, 2014, Parisi had an appointment with a nurse at Stateville, who prescribed niacin, Lopid, fiber lax, and fish oil.

On August 30, 2014, he wrote a letter to Dr. Saleh Obaisi, Stateville's medical director at the time, a defendant in this case, and an employee of Wexford.[4] Although the parties did not submit the letter as evidence before the Court, Parisi testified that he wrote that he had not been receiving his medications as prescribed. There is no evidence regarding whether Obaisi received, read, or responded to the letter.

On November 10, 2014, Parisi saw Dr. Obaisi regarding a muscle spasm, and Dr. Obaisi prescribed steroids to treat it. It is undisputed that this was the first time Parisi met with Dr. Obaisi. There is no evidence regarding whether Parisi mentioned any lapses in the provision of his medications during this appointment.

---

[4] Dr. Obaisi passed away in 2017, and the administrator of his estate has been substituted in his place as a defendant.

On December 9, 2014, Parisi had an appointment with Dr. Alma Martija, a named defendant in this case and an employee of Wexford. She noted that his blood pressure was normal and that his triglyceride level was 684. It is undisputed that Parisi told Dr. Martija that he was not receiving his prescribed Zocor (a statin used to treat cholesterol), aspirin, and Lopid, although the parties dispute whether Parisi was, in fact, receiving these medications. Dr. Martija issued prescriptions for these medications, as well as for fish oil, fiber lax, and aspirin. She also noted that Parisi had diabetes, and she issued an order for him to undergo A1C tests every three months for one year. The parties dispute whether Wexford's clinicians had previously conducted A1C tests on Parisi.

On December 24, 2014, Parisi had another appointment with Dr. Obaisi. Parisi reported to Dr. Obaisi that he had suffered from a pounding headache for four or five days, and Dr. Obaisi found that that Parisi had tachycardia, or an elevated heart rate. Parisi also had a high blood pressure reading. Parisi testified that he showed symptoms of a heart attack and that Dr. Obaisi felt he had blood flow issues, but the parties dispute whether he showed such symptoms or Dr. Obaisi believed he had such problems. It is undisputed, however, that Parisi did not suffer from a heart attack and that Dr. Obaisi told him that a vitamin supplement he was taking, niacin, likely caused the headache and the tachycardia. Dr. Obaisi discontinued the order for Parisi to take niacin, switched him to Atenolol, a beta-blocker used to treat chest pain and hypertension, and placed him on a medication called Glipizide to treat his diabetes.

On February 3, 2015, Parisi filed an emergency grievance stating that on many occasions, he had not received medications on time and that, as of February 3, all of his

medications had lapsed or would soon lapse.  Wexford again asserts that, according to the medical records, Parisi received his medications during this timeframe.  Warden Williams personally did not review the grievance.  Parisi resubmitted the grievance to McBee, who again forwarded the grievance to the health care unit, issued a report recommending that the IDOC take no action, and included the unit's response in her report.  On appeal, the IDOC's Administrative Review Board denied this grievance on December 1, 2015.  It is undisputed that the IDOC's then-Director John Baldwin did not review the grievance and had no personal knowledge of it.

On February 10, 2015, Dr. Martija saw Parisi regarding his blood sugar and cholesterol.  She testified that Parisi's cholesterol profile had improved, "his Niacin [had been] discontinued due to his reports of headache and tachycardia," and he reported to her "that he was feeling much better."  Martija's Decl., Ex. C. to  Wexford's L.R. 56.1 Stmt., dkt. no. 79-1, at 143 ¶ 6.  Parisi had another appointment with Dr. Martija on April 22, 2015, at which she found that his cholesterol level had increased.  There is no indication in the record that he reported to Dr. Martija at either of those appointments that he was not receiving his medication as prescribed.

Parisi had a follow-up appointment with Dr. Martija on February 26, 2015.  She indicated that he had Type II diabetes, continued his prescriptions to treat his diabetes, and assigned him to a Stateville clinical practice for monitoring diabetes.

On April 7, 2015, Dr. Obaisi examined Parisi.  Parisi complained of muscle pains, a side-effect of the cholesterol medication Lopid.  Dr. Obaisi discontinued Parisi's Lopid prescription and switched him to a statin medication.

Parisi had at least four additional medical appointments with Wexford doctors

between April 24, 2013 and May 3, 2015 regarding his complaints of back, neck, and shoulder pain. On June 10, 2015, Parisi transferred from Stateville to Lawrence Correctional Center.

Parisi filed this lawsuit on January 19, 2017. In count 1 of the amended complaint, he alleges, under 42 U.S.C. § 1983, that members of Stateville's medical staff—Dr. Obaisi, Dr. Martija, Dr. Davis, and physician's assistant Owikoti (collectively, the Individual Wexford Defendants)—were deliberately indifferent to his objectively serious medical needs in violation of the Eighth Amendment. In count 2, he brings a similar claim against employees of the IDOC: Williams, Lemke, McBee, Godinez, Baldwin, and Stolworthy (collectively, the IDOC Defendants). In both counts, Parisi asserts a claim against Wexford under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging it was deliberately indifferent as well. The defendants have moved for summary judgment on both claims.

**Discussion**

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018). The Court views the evidence and draws all reasonable inferences in favor of the plaintiff.[5]

---

[5] The Wexford defendants have objected to many of Parisi's responses to Wexford's Local Rule 56.1(b)(3)(C) statements of fact on the grounds that he responds only to facts he disputes, paraphrases the facts to which he responds, and is argumentative. Parties filing opposing motions under Local Rule 56.1 may summarize the paragraphs to which they respond, and they must respond to each number paragraph in the moving party's statement of facts in a manner that is not argumentative. *See* N.D. Ill. LR 56.1(b)(3)(A & B*)*; *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). The Court has not considered any assertions or denials that contain improper arguments or legal

*Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). To survive summary judgment, Parisi must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019).

### A.    Statute of limitations

The Wexford defendants argue that Parisi's claims are barred because the statute of limitations lapsed before he filed his complaint. "Section 1983 suits in Illinois have a two-year statute of limitations, which is tolled while the prisoner exhausts the administrative grievance process." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). "For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Id.* A section 1983 claim that, as here, alleges an ongoing denial of medical care is a continuing violation for accrual purposes. *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019).

As indicated, it is undisputed that Parisi did not receive his Lopid medication and niacin vitamin supplements between mid-February and April 18, 2013. Because more than two years passed between that period and January 19, 2017, the date on which Parisi filed his complaint, Wexford argues that his claim based on this lapse of medications is time-barred. Yet there is a genuine factual dispute regarding whether Parisi received medications as late as February 3, 2015, when he filed a grievance stating that he had run out of his medications or would soon run out of them. The two-

---

conclusions. To the extent Parisi improperly responded to only facts he disputes, that does not change the outcome of this decision.

year statute of limitations on this potentially continuing violation thus began to run on December 1, 2015, when the Administrative Review Board denied Parisi's February 3, 2015 grievance. Because the clock began to run within two years of the date Parisi filed his complaint, his claims are not barred by the statute of limitations.

### B. Deliberate indifference to a serious medical condition

The Eighth Amendment's prohibition on cruel and unusual punishment requires states to provide adequate medical care to inmates. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Giles*, 914 F.3d at 1048-49. To prevail on a claim under the Eighth Amendment, Parisi must show "that he suffered from (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Id.* (internal quotation marks omitted). Parisi must also show that the official's deliberate indifference caused him to suffer some injury. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

### 1. Individual defendants

Parisi's claims against the individual defendants involve two categories of medical conditions. The first category includes claims relating to Parisi's hypertension and hyperlipidemia, and the second category includes a claim relating to his diabetes. The Court addresses each in turn.

### a. Hypertension and hyperlipidemia claims

The first issue is whether Parisi suffered from an objectively serious medical condition relating to hypertension or hyperlipidemia. Without addressing Parisi's hypertension, Wexford argues that Parisi did not suffer from an objectively serious medical condition because his hyperlipidemia, or high cholesterol, was asymptomatic.

But a medical condition is objectively serious where it "has been diagnosed by a physician as mandating treatment." *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019). The condition "need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* at 564. A reasonable jury could find that Parisi's hypertension and hyperlipidemia meet this requirement; doctors at Stateville diagnosed Parisi as needing treatment and prescribed medications to treat these conditions.

The next issue is whether Parisi has presented sufficient evidence to permit a reasonable jury to find that the defendants were deliberately indifferent to his hypertension or hyperlipidemia. To survive summary judgment with respect to the individual defendants, Parisi must show that they knew about yet disregarded a substantial risk of harm to his health. *Id.* The Court addresses each group of individual defendants separately.

### i. Individual Wexford Defendants

As an initial matter, the Individual Wexford Defendants contend that Parisi's deliberate indifference claim against them is limited to the timeframe between February and April 2013 when he undisputedly did not receive his medications. There is, however, a genuine factual dispute regarding whether Parisi received medications as late as February 3, 2015. Accordingly, there is no basis to limit the claim to the time period between February and April 2013.

The Individual Wexford Defendants argue that they were unaware that Parisi was not receiving his medications and that, when they became aware of it, they issued prescriptions to provide him with his medications. Parisi contends that these

defendants ignored his requests for medication and his statements that he was not receiving his medications as prescribed. "[A] prison official's decision to ignore a request for medical assistance" can constitute deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). But nothing in the record indicates that Dr. Davis, Dr. Martija, or physician's assistant Owikoti ignored any of Parisi's requests for medications. On April 18, 2013, when Dr. Davis realized that Parisi had not been receiving his Lopid medications and niacin vitamin supplements, she restarted those prescriptions. On December 9, 2014, when Parisi told Dr. Martija that he was not receiving Zocor, aspirin, and Lopid, she filed prescriptions for those medications. And on April 8, 2014, when Parisi told Owikoti that he was not receiving his fish oil, Owikoti issued an order for it.

Nor does Parisi present evidence from which a reasonable jury could find that Dr. Obaisi knew about and ignored his requests for medication. Although Parisi testified that he wrote a letter to Dr. Obaisi on August 30, 2014 stating that he had not been receiving his medications as prescribed, he has presented no evidence that Dr. Obaisi received the letter and ignored it or that the lapse in his medications was within Dr. Obaisi's control, much less that he was deliberately indifferent to Parisi's medical needs by declining to prescribe him medication. *See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (summary judgment in favor of a doctor was proper where prisoner offered no evidence that delays in treatment were within the doctor's control). Indeed, at the three appointments where he examined Parisi, Dr. Obaisi prescribed medications for him. Given these facts, no reasonable jury could find that Dr. Obaisi was deliberately indifferent to the lapses in Parisi's medications.

Second, the Individual Wexford Defendants argue that, even if they knew that he

was not receiving his medication and did nothing to remedy the issue, Parisi provides no evidence from which a reasonable jury could find that they caused him harm by delaying his medications. In response, Parisi argues that the lapses in his medication caused him to experience symptoms of a heart attack. Additionally, Parisi argues that the lapses in his medication increased his risk of having a stroke or heart attack by extending the length of time during which he had increased cholesterol and blood pressure levels.

To prevail on an argument that a delay in treatment violates the Eighth Amendment, a plaintiff must show that the delay exacerbated the harm to him or "unnecessarily prolonged pain." *Petties*, 836 F.3d at 731; *see also Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (the delay, rather than the underlying medical condition, must cause "some degree of harm"). Although Parisi contends that he experienced symptoms of a heart attack in December 2014 due to the lapses in his medication, there is no evidence to support the proposition that he actually had a heart attack. Rather, the record indicates that Parisi experienced a pounding headache that lasted four or five days and tachycardia, an elevated heart rate. Further, there is no evidence connecting these symptoms with the fact that he was (as he contends) not receiving his medications at the time. Indeed, Parisi testified during his deposition that Dr. Obaisi told him that niacin, a vitamin supplement he was taking at the time for his cholesterol, likely caused the symptoms. Parisi's Dep., Ex. A to Wexford's L.R. 56.1 Stmt., dkt. no. 79-1, at 88:10–13. In response, Dr. Obaisi changed his prescription and, afterward, Dr. Martija testified, Parisi said he "was feeling much better." Martija's Decl., Ex. C to Wexford's L.R. 56.1 Stmt., dkt. no. 79-1, at 143 ¶ 6. In the face of this

evidence, Parisi offers nothing from which a reasonable jury could find that his nonreceipt of his prescribed medications caused his symptoms.

Additionally, although it is troubling that Parisi did not receive his prescribed medications for at least two months and perhaps longer, there is no evidence that would permit a reasonable jury to find that these lapses increased his risk of having a stroke or heart attack. Parisi must be able to provide point to *some* evidence from which a reasonable jury could conclude that the delay caused him harm. *See Jackson*, 733 F.3d at 789. The Court does not agree, as the defendants suggest, that a plaintiff in Parisi's position is required to present testimony from a medical expert to sustain an Eighth Amendment claim. *See Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007). But he cannot rely on conclusions, unsupported by evidence, about the possible long-term effects of high blood pressure and cholesterol. *See Jackson*, 733 F.3d at 789. And although Parisi offers some evidence that heightened triglyceride levels are connected to an increase in the risk of heart attacks and strokes, he offers no evidence that the lapses in medications caused *his* triglyceride levels to be elevated to that level and for such a prolonged time as to have "endangered his long-term health." *See id.*

There is evidence that Parisi's blood pressure was high at various times during the periods when he says he missed medications, and particularly in December 2014 when he reported a pounding headache and tachycardia. But he offers no evidence that he had been prescribed, and was not receiving, medication during these time periods that would have ameliorated high blood pressure. Doctors generally prescribe most, if not all, of the medications that Parisi received during these time frames to address other ailments such as high cholesterol levels. Accordingly, even if he was not

receiving these medications, as he contends, Parisi offers no evidence that this could have had anything to do with his elevated blood pressure. And to the extent that Parisi contends that he suffered from headaches, dizzy spells, blurry vision, lightheadedness, shoulder and neck pain, and abdominal problems because his cholesterol and, specifically, triglyceride levels were higher due to the lapse in his cholesterol medications, he offers no evidence that would permit a reasonable jury to find that these symptoms could be caused by elevated cholesterol or triglyceride levels.

It is apparent from the record that Parisi's experience with hypertension and hyperlipidemia has been long and difficult, and the lapses in the provision of his medications are concerning. But, without more, that does not support an Eighth Amendment claim against the Individual Wexford Defendants regarding Parisi's hypertension and hyperlipidemia. Dr. Obaisi, Dr. Martija, Dr. Davis, and physician assistant Owikoti are entitled to summary judgment on Parisi's claims concerning hypertension and hyperlipidemia.

### ii. IDOC Defendants

Next, Parisi has not provided evidence of deliberate indifference by the IDOC Defendants. Parisi contends that each IDOC defendant knew that he was not receiving his medications but did nothing to address the problem. But he points to no evidence that would permit a reasonable jury to find that the wardens, Lemke and Williams, or the IDOC's directors and acting directors, Godinez, Stolworthy, and Baldwin, had any actual awareness of his objectively serious medical condition or his complaints that he was not receiving his medications. *See Palmer*, 928 F.3d at 564. The Seventh Circuit has stated that it is not reasonable to assume that wardens or high-level prison officials are

"directly involved in the prison's day-to-day operations," *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir.1998), or that they have personal knowledge of an alleged constitutional violation through their roles in the grievance process, *Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012). Parisi offers no evidence that would permit a finding the wardens or IDOC directors were aware of his medical conditions or the lapse in his medications. Their supervisory roles in the grievance process is not enough to hold them liable for deliberate indifference.

There is evidence that McBee, the prison counselor who responded to Parisi's grievances, knew about Parisi's objectively serious medical condition and his complaints that he was not receiving medical care. But a prison official who is aware of a prisoner's complaint regarding a lack of medical care is not deliberately indifferent where she investigates the complaints and verifies with medical providers that the prisoner is receiving treatment. *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005); *Giles*, 914 F.3d at 1049 ("If a prisoner is under the care of medical experts[,] a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). For each of the four grievances Parisi filed regarding his complaints that he was not receiving medications, McBee raised Parisi's complaints with a member of the prison's Health Care Unit and received a response indicating that he was receiving treatment. Therefore, no reasonable jury could find that McBee acted with deliberate indifference.

For these reasons, the Individual IDOC Defendants—Williams, Lemke, McBee, Godinez, Stolworthy, and Baldwin—are entitled to summary judgment. Accordingly, the Court need not address their arguments that they are entitled to qualified immunity.

### b.　Diabetes claim

Parisi also argues that the Wexford defendants were deliberately indifferent to another medical condition from which he suffers: Type II diabetes.[6]  He contends that they delayed the diagnosis and treatment of his diabetes for over a year by failing to complete testing regarding his high blood glucose levels.  But Parisi consistently represented in his complaint and interrogatories that his claims involved only hypertension and hyperlipidemia.  His complaint stated that he was "diagnosed with hypertension, hyperlipidemia, and other serious medical conditions"; it said nothing about diabetes.  Am. Compl., dkt. no. 17, ¶ 21.  And in response to the Wexford defendants' interrogatories regarding the specific "condition(s) at issue in this case for which medical treatment was denied" and "the nature of [these] medical condition[s] and [their] effect on" him, Parisi did not respond that his contentions related to diabetes.  Pl.'s Ans. to Wexford Defs.' Interrogs., Ex. 2 to Wexford Defs.' Resp. to Pl.'s L.R. 56.1 Stmt., dkt. no. 93-1, at 11–12 ¶¶ 2–3.

Under these circumstances, allowing Parisi to pursue a claim regarding diabetes would amount to allowing him to amend his complaint in the course of summary judgment to add a new claim.  *See Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1044 (7th Cir. 2000).  Although there is a presumption that a plaintiff should have an opportunity to test a claim on the merits, a court need not allow an amendment where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

---

[6] With respect to the diabetes claim, the Court addresses the alleged deliberate indifference of only the Wexford Defendants because Parisi does not argue that the IDOC Defendants or Wexford itself were deliberately indifferent to his diabetes.

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). First of all, Parisi never moved, even now, to further amend his complaint. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (a district court is under no obligation to *sua sponte* amend a plaintiff's complaint where the plaintiff never moved to do so. More importantly, however, allowing Parisi to assert a claim regarding diabetes at this point would unfairly prejudice the defendants, who unquestionably would have to conduct additional discovery were the Court to permit Parisi to add this claim now. *See, e.g.*, *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) ("There must be a point at which a plaintiff makes a commitment to the theory of its case.").

Finally, even were the Court to permit Parisi to add a claim concerning diabetes, no reasonable jury could find based on the evidence that the Wexford defendants acted with deliberate indifference in treating his diabetes. *See Bethany Pharmacal*, 241 F.3d at 861 ("An amendment is futile if the added claim would not survive a motion for summary judgment."). Diabetes is a serious medical condition, *see, e.g.*, *Egebergh v. Nicholson*, 272 F.3d 925, 928 (7th Cir. 2001), but Parisi cites no evidence that ties any actual harm to the claimed delays in diagnosing and treating his diabetes. *See Jackson*, 733 F.3d at 790.

For these reasons, the Court concludes that amendment of Parisi's complaint to include a claim regarding diabetes would be futile due to the absence of evidence needed to sustain the claim. The Individual Wexford Defendants are entitled to summary judgment on all claims against them.

## 2. Wexford

Parisi's claim against Wexford proceeds under the theory of municipal liability announced in *Monell*, 436 U.S. at 694, which the Seventh Circuit has "held applies in § 1983 claims brought against private companies acting under color of state law." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019) (citation omitted). For his claims against Wexford to survive summary judgment, Parisi must provide evidence that would permit a reasonable jury to find "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

Parisi first contends that Wexford failed to train its employees, as demonstrated by Dr. Aguinaldo's failure to properly write a valid prescription. But Parisi has offered no evidence that Dr. Aguinaldo's invalid prescription was the result of any policy at all. Instead, the record shows Dr. Aguinaldo's mistake in omitting the during of that prescription was the type of "isolated" incident that does not "support an inference of a custom or policy." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014).

Parisi next contends that Wexford had policies or practices of inaction through which it failed to provide its employees with "the tools, training, time and ability to ensure that patients like Mr. Parisi were properly diagnosed and treated" and declined to address "systematic failures in the delivery of medical care to inmates at Stateville." Pl.'s Resp., dkt. no. 88, at 9. But Parisi offers no evidence regarding Wexford's alleged failure to provide its employees with resources or training. With respect to Wexford's

alleged decision not to address systemic failures, Parisi cites to testimony during the deposition of Dr. Neil Fisher, Wexford's designee under Federal Rule of Civil Procedure 30(b)(6), who stated that "Stateville had its challenges" regarding the processing of medication orders during the time when Parisi alleged that he was not receiving his medication. Fisher Dep., Ex. E to Wexford's L.R. 56.1 Stmt., dkt. no. 79-1, at 56:17–23. This is insufficient to permit Parisi's *Monell* claim against Wexford to survive summary judgment. Even if there were problems with the medication processing system at Stateville, Parisi has offered no evidence from which a reasonable jury could find that Wexford "made a conscious decision not to" ensure that prisoners received their medications or to address the issues with the system. *Walker*, 940 F.3d at 966. Nor has he offered evidence that would permit a finding that Wexford knew that "constitutionally necessary" medications were not being processed "with such frequency that it ignored an obvious risk of serious harm." *Id.* at 967. Further, it is not even clear from the record that Wexford, rather than the prison administration or Boswell Pharmacy, controlled the alleged systemic failures in the medication processing system at the prison. *See id.*

Wexford is therefore entitled to summary judgment on Parisi's *Monell* claim.[7]

## Conclusion

For the foregoing reasons, the Court grants the defendants' motions for summary

---

[7] In the brief in support of its motion for summary judgment, Wexford addressed an argument it anticipated Parisi would make regarding whether Wexford maintains a policy or widespread practice of denying and delaying necessary medical treatment to maximize its profits. Because Parisi did not raise or address that argument in his response brief, the Court need not address it.

judgment [dkt. nos. 78 & 82] and directs the Clerk to enter judgment in favor of

defendants and against plaintiff.

                                    _____s/ Matthew F. Kennelly_____
                                          MATTHEW F. KENNELLY
                                          United States District Judge

Date:  January 16, 2020